*218 OPINION
Justice TSOSIE,
joined by Justice LUl-FRANK, delivered the opinion of the Court.
STATEMENT
This case concerns an appeal by the Fort McDowell Yavapai Nation from the post-disposition of a criminal case. The issue is whether the Trial Court had the authority to order a criminal defendant’s fees and costs to be deducted from his per capita allocation, given the substantive changes made to preexisting policies on this issue by the Fort McDowell Yavapai Council. This Court has jurisdiction to hear this appeal pursuant to Section 4-32(B), Fort McDowell Law and Order Code, which provides appellate jurisdiction over any final judgment issued by the courts of the Fort McDowell Yavapai Nation.
On October 22, 2002, Darold. Haynes was arrested for driving while intoxicated and driving with a suspended license. On December 13, 2002, a judgment of guilt was entered against him on both charges. Defendant was fined a total of $600, sentenced to 15 days in jail (from December 13 to December 28, 2002) and ordered to pay incarceration costs and fees of SI,050. On January 26, 2003, a Trial Court ordered was entered extending the time for Haynes to pay his fines until February 14, 2003. On February 3, 2003, Iho Trial Court entered an Order Withholding Per Capita. This Order was addressed to the Fort McDowell Finance Officer. It provided that:
THEREFORE, IT IS ORDERED Finance is authorized to deduct the amount of $2,250.00 from Darold Haynesf] Per Capita and distribute said amount to the above listed payees [the Tribal Court and the Nation’s , Police department] pursuant to the financial agreements by Tribal Finance, Tribal Court and Tribal Police.
On February 4, 2003, the Nation moved for reconsideration of the February 3 Order Withholding Per Capita. On March 12, the Trial Court entered an order denying this motion. On March 17, the Trial Court entered a corrected Order Withholding Per Capita For Incarceration Fees and Fines, which reduced the amount to be deducted from Haynes’ per capita from $2,250 to $1,650,
On March 19, 2003, the Nation filed a Notice of Appeal from the February 3, March 12 and March 17 orders, and on April 4, 2003, it moved in this Court for a stay of execution, pending appeal, of those orders. This matter was consolidated with three other cases, which raised similar issues as to whether the Trial Court had the authority to order a criminal defendant’s fines and costs to be deducted from his Per Capita allocation. In its April 22, 2003 opinion, this Court found that the appeals filed in the other three cases should be dismissed for lack of timeliness. Fort McDowell Yavapai Nation vs. Bemon Thomas, Emery Smith, Sr., Darrell Isaac & Darold Haynes (Fort McDowell Yavapai Supreme Court, April 22, 2003). In the Thomas, Smith and Isaac cases, the notices of appeal were filed long after the expiration of the five-judicial-day period during which such a notice must be filed pursuant to Section 4^34(A) of the Nation’s Law and Order Code. This Court therefore dismissed the appeals in those cases and denied the motions for stays pending appeals in those cases.
In the Haynes case, however, this Court found that the appeal was filed within the required five-judicial-day period. Moreover, this Court held that the Haynes per capita, order should be stayed pending our decision on the merits of the Nation’s ap *219 peal. The Haynes appeal was fully briefed and then argued on June 13, 2003. This opinion addresses the merits of the appeal and holds that the Trial Court erred in issuing the Order Withholding Per Capita.
DISCUSSION
In order to resolve the issue on appeal, this Court must interpret recent Tribal Council actions regarding per capita payments to tribal members who are accused of or convicted of criminal offenses. Prior to these recent changes, qualified tribal members accused or convicted of crimes were entitled to continue receiving their per capita benefits. Moreover, in sentencing a person convicted of an offense, the Trial Court was authorized by Section 8-3(b) of the Law and Order Code to order certain costs to be deducted from these payments. Section 8—3(b) provides that:
If the offender is a member of the Fort McDowell Yavapai Nation and is currently receiving per capita payments from the Fort McDowell Yavapai Nation, the [sentencing] court may order that [certain listed] costs be deducted from the offender’s monthly per capita payments and be paid to the victim or the Nation.
The costs that could be ordered deducted under Section S—3(b) were “restitution to the victim of the offense,” “the cost of [the offender’s] incarceration,” certain “costs directly incurred and reasonably necessary for the investigation of the offense,” and the “cost of services, counseling, treatment and rehabilitation provided or arranged by the Fort McDowell Family and Community Services.” Law and Order Code, Section 8(a).
A. The 2003 Revenue Allocation Plan
In late September, 2002, the Tribal Council acted to change this situation in its Revenue Allocation Plan (“RAP”) for the 2003 fiscal year (the Nation’s fiscal year begins on October 1). Section VII of the RAP provides- comprehensive guidance on the distribution and allocation of per capita payments to tribal members from the Nation’s gaming revenues and specifies that per capita benefits are paid to “advance the personal health, safety and welfare of qualified tribal members.” The RAP further specifies that “to advance the personal health, safety and welfare of qualified tribal members and the Nation, per capita distributions shall be suspended and forfeited,” for adult and minor members alike, “upon the following types of negative behaviors.” RAP, Section VII(C). In relevant part to the facts of this case, the RAP provides that:
1. • Suspension—Per Capita payments shall be suspended until a final court finding of guilt or innocence for [arrest of a tribal member for a list of enumerated offenses, including] any alcohol and/or drag related crime.
2. Forfeiture—Per Capita payments shall be forfeited dating back from the time of arrest until the person’s court sentence has been completely served.
After offering an example, the RAP provides that “fpjer capita payments are forfeited” for “[cjonviction for any alcohol or drug related crime,” as well as the other enumerated offenses.
Finally, Section VII(C) provides that “[p]ayments for child support, tribal loans and any other tribal payments and reimbursements to the Nation shall be paid first, then any forfeited proceeds shall be placed in a separate account to fund government programs dealing with the above offenses.”
Tribal members were informed of this change in a memorandum, dated September 3QV 2002, that was addressed;by-the Council to tribal members. This memo *220 randum generally reproduced the relevant language in the RAP, except that, in describing the payments that should be paid out of forfeited proceeds prior to those proceeds being placed in a separate account, the memorandum included payments for “court orders,” and mentioned “housing, etc.” as an example of “other tribal payments.”
11. The January 200:1 Amendment to the RAP
On January 28, 2003, in apparent response to the confusion expressed by tribal members as to the ultimate effect of the changes made by the RAP to existing policy, the Nation issued a Resolution entitled “Amendment to 2003 Revenue Allocation Plan,” which acknowledged that the Nation had “established a Revenue Allocation Plan to distribute net gaming revenues,” and also that “the Plan needs some clarification in certain provisions.” The Tribal Council then “amended” the Plan by changing certain words to be more inclusive, by specifying how the suspension and forfeiture provision should be computed on a monthly basis, and by clarifying that a person’s court sentence is “completely served” if “incarceration, probation, treatment and parole are completed, as well as, court and detention costs and fines are paid,” Section 4, Reso. No. Ft. Mel) 2003-10. Section 4 expressly states that “No fines/costs pursuant to the enumerated criminal offenses above can be paid from per capita payments.”
C. Issue on Appeal
The parties agree that under the current law, the Trial Court may no longer order a criminal defendant’s fines and costs to be deducted from his or her per capita distribution. The only issue in this appeal is whether the 2003 RAP effected the substantive change to the existing law represented by Section 8—3(b) of the Law and Order Code, or whether the substantive change did not take effect until the Tribal Council’s January 28, 2003 Resolution. If the substantive change took place at the time the RAP became effective, then the Trial Court did not have the authority to enter the Order Withholding Per Capita for a defendant who was arrested, charged, convicted or sentenced after the effective date of the RAP, which was October 1, 2002. If the substantive change did not take place until January 28, 2003, then the Trial Court possessed the authority to enter such an Order pursuant to Section 8-3(b) until January 28, 2003. We hold that the substantive change took place at the time the RAP became effective.
This Court is bound to apply the law of the Fort McDowell Yavapai Nation to all cases within its jurisdiction. The Court must give effect to the language of the law and must interpret this language in light of the Tribal Council’s intent in enacting the law. It is clear that the 2003 Revenue Allocation Plan changed the law with respect to payment of per capita benefits to eligible tribal members who were arrested, charged, convicted or sentenced for any of the enumerated crimes after October 1, 2002. Mr. Haynes’ offense falls within the list of enumerated crimes and was committed after the effective date of the RAP. Under the RAP, Mr. Haynes’ per capita payments were forfeited from the time period of his arrest on October 22, 2002 until his “court sentence has been completely served.” The Tribal Council’s intent in enacting the provision is clear: the Fort McDowell Nation sought to curb unlawful conduct that threatened the health and safety of the Nation and its members by removing a substantial benefit of membership until the defendant had fully served his or her sentence. If the defendant had not fully served his or her *221 sentence, he or she would be unable to receive his or her per capita distribution, and thus, it would be impossible to secure payment for court fines and costs from forfeited per capita. This would further make defendants responsible for the costs of their criminal conduct. Given the Council’s obvious intention, it would be ridiculous to adopt an interpretation of the RAP that would force the Fort McDowell Nation to shoulder the costs of a defendant’s criminal conduct and alleviate the burden on the member committing the wrongdoing. Therefore, the provision in the January 28, 2003 Resolution that defines what it means to “completely serve” a sentence and specifies that no fines or costs for such criminal conduct may be paid from per capita payments is merely a clarification of the Tribal Council’s clear intent in passing the 2003 Revenue Allocation Plan. After October 1, 2002, the Fort McDowell Trial Court no longer had discretion to order payment of fines or costs out of per capita distributions for defendants arrested, charged with or convicted of the enumerated crimes.
We are not persuaded by the argument that the language enabling certain enumerated debts (i.e. mortgage, child support) to be paid from forfeited per capita means that a criminal defendant is still “receiving per capita.” It is clear that the Fort McDowell Yavapai Nation Council sought to protect vulnerable parties (e.g. a defendant’s spouse and dependent children) from the financial consequences of the defendant’s wrongdoing. This is consistent with the Council’s expressed purpose to advance the health, safety and welfare of the Nation and its members. It does not follow that the Council would have any obligation to secure payment for costs and fines assessed in order to punish the wrongful conduct of a criminal defendant. The Council made a considered judgment about payment of per capita benefits to advance several important goals. That is the responsibility of the legislative branch of government and requires deference from the Nation’s judicial system.
CONCLUSION
We hold that the Trial Court erred in issuing the Order Withholding Per Capita. The Order should be set aside and the terms of Mr. Haynes’ sentencing order should proceed in accordance with the terms of that order.